The opinion of the court was delivered by
Breaux, J.
This was a suit for a judgment declaring seventy-three shares of stock in the corporation styled Janvier & Moss, Limited, as well as the dividends thereon, in the name of Mrs. Rosa Rose Moss, wife of Hartwig Moss, to be the property of Ilartwig Moss and thereby liable to the claim which the ¡petitioner holds against the latter and for which it obtained a judgment.
Petitioner asks to have the title of Mrs. Rosa Rose Moss to this stock declared fraudulent and simulated, and, also, for an injunction restraining Mrs. Rosa Rose Moss and Hartwig Moss from parting in any manner with these shares. Mrs. .Rosa Rose Moss moved to have the injunction dissolved, on the ground that she cannot lawfully be deprived of the right to use and dispose of her property as she sees fit. She also filed an answer in which she averred that she became separate in property from her husband by a judgment of the District Court for the Parish of Tensas on the 19th day of January, 1888; and that by the said judgment the community of acquets and gains existing between her and her husband was dissolved, and that she was authorized to administer her property. Janvier and Moss, also made defendants, in their answer denied that Hartwig Moss is the holder of any stock, or has any interest in the corporation of Janvier & Moss, Limited.
The statement of facts showed that plaintiff is a judgment creditor of Hartwig Moss for a large amount, as alleged by it, and that a fi. fa. issued against Hartwig Moss under the judgment against him, and the property in the hands of Janvier & Moss, Limited, which is the subject of controversy in this case, was seized as his; that plaintiff filed a supplemental and, amended petition to their original petition in which they allege, in substance, that Mrs. Rosa Rose Moss, wife of Hartwig Moss, has in her own name no other property than that described in the original petition, and which plaintiff charged was the property of her husband, except certain real estate situated in the city of New Orleans ■which plaintiff also believes and avers is the property of her husband, or of the community, and, as such, is liable to its claim, but that being *1526 affected by mortgage, plaintiff does not choose to have it seized and sold for its claim.
On the part of defendants, the facts are that Mrs. Moss, as averred by her, obtained a judgment of separation of property against her husband in 1888; that she owned a plantation in the parish of Tensas which was cultivated for her account and which she sold in 1898.
It appears that Hartwig Moss was connected with Ferdinand Marks in the insurance business from 1891 to 1893, and that during that time he realized a considerable sum, five thousand two hundred and fifty dollars of which was turned over to a commission merchant of this city in 1892 (or'rather the claim was sold to this merchant), who was or had been the commission merchant of Mrs. Moss, and who was also Mr. Moss’ commission merchant before he (Moss) became insolvent.
In 1893, Janvier and Moss, after the latter had left the Marks firm, organized a corporation under the limited liability act, with a capital of ten thousand dollars, not paid up. There was no cash paid on either side. The late Mr. Janvier had many clients and friends with whom he had dealt for many years, while Mrs. Moss, the other member of the firm desired to secure employment for her husband. After receiving a number of shares, she placed two thousand dollars with the firm as a loan and Mr. Janvier, the other member of the firm, made a similar advance to it. No other amount was ever contributed to the business of the new or the old firm. The agreement was tha-t this amount would not be returned to Mrs. Moss until the corporation had earned it. Owing to the death of the senior member of the firm, another corporation was organized in 1898, which succeeded the former. In this new corporation Mrs. Moss held seventy-three shares. The stock was issued to Mrs. Moss on the one hand and to the young ladies, representing the Janvier interest, on the other, as representing' their interest in a well-established business. Mr. Moss attended, in great part, to the management of the business. In fact, it appears that the business depended largely upon his services and industry, together with the industry of the secretary and treasurer of the corporation who represented the Janvier interests. It appears that he, Moss, is not paid anything for his services; Mrs. Moss draws the money. There is an account kept in her name showing the amount she has drawn, but Mr. Moss has no account with the firm and does not draw any money therefrom.
With reference to the assets of the firm, .the vice-president testified *1527 that they consist of the business agency of certain insurance companies, a certain business on their books, and good will acquired by the industry of those in charge of the corporation; that without this the shares would be of no value. The good will of the business depended largely upon the name and influence of the late Mr. Janvier. It was, afterwards, retained by the efforts of the members of his family, and the services of Mr. Moss. The evidence reveals that the shareholders .made something over and above expenses.
When the case was tried in the district court, Mrs. Moss was still the lender of the two thousand dollars before stated, and the owner of the shares which were issued to her when the corporation was organized.
The record discloses that Mr. and Mrs. Moss are the parents of six children; the oldest was in his fifteenth year when the parents removed to New Orleans. The judge of the district court rendered judgment in favor of the defendants, and dissolved plaintiff’s injunction, reserving the former’s right in the plaintiff’s bond. From this judgment plaintiff appeals. Nothing in the testimony shows that the writ of fi. fa. which was issued would take anything except property belonging to the wife. The money advanced to the firm was unquestionably hers; there is no testimony to the contrary. The proof that, years ago, the husband went into partnership with Ferdinand Marks and received for his share a considerable amount, as before stated, does not show that the wife received any part of this sum. They had separate accounts and nothing shows that the two thousand dollars in question were transferred from his, the husband’s account, to hers. At one time, she owned a plantation, and crops were cultivated for her account, from the proceeds of which it may well be that this amount in question was realized by her. At any rate, the evidence does not show that this amount was turned over to her by her husband. The business of Janvier and Moss, to which the wife contributed this amount, was conducted exclusively in her name in so far as she was concerned. Whatever were the returns, they were considered as her property. The amount was only an incident of the main issue. It is not claimed by plaintiff as belonging to the husband. From that point of view we think that the wife’-s evidence, regarding these two thousand dollars, is amply corroborated.
From the principle that a separation of property dissolves the community, it results that all that the separate spouses acquire is for his or *1528 her account alone, but here plaintiff insists that the wife is benefited to such an extent by the energy and industry of her husband, that the profits must be held as accruing to his separate benefit, or that of the community. We will state here that it does not appear that the profits were at all large. The wife, it is true, did manage to buy real estate of no great value in this city, but it remains so encumbered with mortgages that plaintiff has not undertaken to have it seized, although it contends that it, while in the name of the wife, must be held under the rule which it invokes, to have fallen into the community.
With reference to a community which is dissolved by a judgment of separation of property, it may well be that the husband and wife may reinstate it by abandoning' the protection accorded to the wife under the judgment, provided the interests of third persons remain undisturbed thereby. But nothing of the kind seems to have been intended here, either expressly or impliedly. There were no large accumulations made and placed to the credit of the husband. He renders services, it is true, but they are entirely in the interest of the wife. It would be different if the husband were not serving in the wife’s interest, but the wife’s interest were serving the husband.
The law provides that the wife should contribute to the expenses of the family and to the education of the children, to the extent of her ability. She is held to their entire support if the husband is entirely without resources. It follows that to the extent of his ability, at least, as much ,in the way of support, is incumbent upon the husband. If the husband, after having seen his stores dwindle down until he becomes absolutely without the means to support and raise his family, then assists his wife in this most laudable purpose, instead of remaining supinely indifferent, we cannot think that this can be taken as an evidence of intention to re-establish the community. In fine, in our view, it is not possible under the law to change the title, to the shares in question from the wife to the husband on the evidence here. The money advanced was advanced by her and the Jshares were issued to her in good faith. The services of the husband that the wife might get a revenue therefrom did not have the effect of converting them into his property. This was not a large corporation yielding a large revenue in which the husband received a large salary and dividends on shares nominally in the name of the wife, but it is, as we take it, a partnership organized into a corporation limited in order, we infer, to concentrate the busi *1529 ness and make it less difficult to manage, and from which the wife receives some revenue. By the judgment of separation, the wife has the enjoyment and management of her paraphernal property. If it prospers a little owing to the husband’s management for her, the profits do not fall into the community or become his own. The judgment of the district court is affirmed to the extent of Mrs. Moss’ interest in the firm of Janvier & Moss. That, we understand, includes seventy-three shares, all, as we take it, involved in this suit.
It is therefore adjudged, ordered and decreed that the judgment appealed from be affirmed at appellant’s costs.
Rehearing refused.