## FOGG & VANDERSLICE *vs.* JOHNSTON.

[BILL IN EQUITY FOR DISSOLUTION OF PARTNERSHIP.]

1. *For what causes equity will dissolve partnership.*—A court of equity may decree the dissolution of a partnership during the term for which it was entered into, and declare it void *ab initio*, where there is fraud, imposition, misrepresentation, or oppression in the original agreement; and may also decree a dissolution for causes arising subsequently to its formation, founded upon the misconduct, fraud, or violation of duty by one partner, or on account of his inability or incapacity to perform his obligations, and to contribute his skill, labor, and diligence in the promotion and accomplishment of the objects of the partnership, or for the existence of an impracticability in the undertaking for which the partnership was formed.

2. *Dissolution decreed from time of abandonment of contract by injured party and notice thereof.*—Where it is shown that the partner asking a dissolution was deceived and misled by the misrepresentations of his co-partner as to his skill and capacity as a machinist and engineer, and but for these misrepresentations would not have entered into the partnership; and that the defendant, since the formation of the partnership, has been guilty of misconduct and violation of duty,—a dissolution may be decreed, if the complainant's equities so require, to date from the time of his abandonment of the contract and notice thereof given to the defendant.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. WADE KEYES.

THIS bill was filed by William Johnston, the appellee, and alleged the following facts: That complainant, living in Dallas county, and owning a valuable tract of land in Mobile county on which he was desirous of erecting a steam saw-mill, and being totally unacquainted with mechanics and with that kind of business, was anxious to form a partnership for that purpose with some person who was skilled in machinery and fully competent to erect and carry on such a mill; that upon his wishes in this particular becoming known, Samuel Fogg, one of the defendants, made application to him to become interested with him in said business, representing himself to be an experienced and accomplished engineer and machinist, fully competent to erect said mill, to procure and select the necessary machinery, to make any alterations or repairs that might become necessary, and to superintend and conduct the said

mills when in operation; that Fogg further represented to complainant, that he had learned the business of a practical machinist in England, and was comparatively a stranger in this country, and could therefore give no recommendations; that complainant, being deceived and induced by these representations of Fogg's, consented to form a partnership with him for the erection and conducting of a steam saw-mill, and accordingly on the first of August, 1851, articles of partnership were entered into between them and one Jacob Vanderslice, the stipulations of which are as follows:

"William Johnston agrees to furnish the capital to start said mill, clear of interest; and said Fogg and Vanderslice agree to refund all the expenses to said Johnston, except one-third of the price of the engine. Said Johnston is to give said Vanderslice and Fogg the privilege of all the saw-logs for their service for said mill; and after expenses are paid, then to be equal in the profits and losses. If any one of the three wishes to quit, he is not at liberty to sell without the consent of the other parties. It is agreed by the parties, that if two of the partners should decease, the whole shall be closed by sale, and a division made to the surviving legatees. If Jacob Vanderslice, or Samuel Fogg, should decease, a good hand is to be put in their place, at the expense or interest of said deceased share. The business to be carried on for a space not less than five years; and if the partners still survive, business to go on as usual till all the timber is cut suitable for saw logs."

The bill alleges, that these articles, through mistake, do not express the precise contract between the parties, and specifies several particulars in which they are incorrect; but these are immaterial, as the case is here presented. It further alleges, that on the formation of this partnership, Fogg was sent to the northern cities to purchase the necessary machinery for the mill, Johnston paying his expenses; that the machinery which he there purchased was entirely different from that which they had previously determined on, was much more costly, and not adapted to such a mill as they proposed to erect; that when Fogg returned, and the erection of the mill was commenced, complainant soon became satisfied that he had been grossly deceived by Fogg in his representations as

to his skill and capacity as a machinist and engineer; that he displayed perfect ignorance of the most common operations of the machinery, and was utterly incompetent to superintend it; that in consequence of this ignorance and incapacity on the part of Fogg, complainant has been compelled to expend large sums of money on said mill, which would otherwise have been unnecessary, and which greatly exceed the amount contemplated by the parties, and thus one of the objects of the partnership has entirely failed and become impracticable; that Fogg has been wasteful and extravagant in the expenditures of the firm, and has contracted large outstanding debts in the name of the firm, which, as Fogg is insolvent and Vanderslice has but little means, complainant will be compelled to pay; that he refuses to let complainant have access to the books of the firm, and will not give him any information about the state of the business, &c.

The prayer of the bill is, for a dissolution of the partnership, an account of partnership transactions, an injunction, and for general relief; and further, that complainant may be permitted, on giving good security, to take charge of the mill and work it until final hearing, or that a receiver may be appointed for that purpose.

Fogg answered the bill, denying all the allegations of fraud, misrepresentation, or deceit on his part, in the formation of the partnership, and of his subsequent neglect, inattention, or other misconduct in the management of the business of the mill; and giving the following account of the formation of the partnership, and of his statements to complainant at that time: "Some time in the month of April, 1851, respondent was at complainant's residence in Dallas county, and while there was employed by complainant to repair a clock. During the time of his stay, he had a long conversation with complainant on the subject of manufactures, in which complainant seemed to be much interested, and respondent entered fully into an explanation of those in which he had been personally engaged as superintendent. On complainant's invitation, respondent remained over one night at his house; and on the following day, complainant informed him that he owned a tract of land in the county of Mobile, which was remarkably well-timbered, and proposed that they should erect a saw-mill

upon it; that he could furnish the necessary means, and that respondent should superintend its construction and management; and that they should share as partners in the profits of the business, after he had been reimbursed for his outlay. This seemed to be a good arrangement, and respondent accepted the offer." After examining the lands in person, respondent returned to complainant's house, for the purpose of completing their arrangements preparatory to starting north for the machinery. Complainant then informed him, that since he himself was getting old, and respondent was a stranger to him, he had concluded to associate Jacob Vanderslice with them; and this arrangement was finally consummated. " Respondent denies that he solicited the formation of the partnership, and alleges that the proposition originated with complainant as above stated. He denies that he ever made such statements as to his knowledge and capacity, or that he was an experienced and accomplished engineer, as asserted in complainant's bill. The amount of their conversation upon this head was, that respondent had superintended in some manufactures, and had been two weeks at a saw-mill, running the engine; that he was acquainted with the theory of the engine, and felt himself competent to put up and superintend the machinery; but respondent made no pretensions to being a machinist, or that by education or experience he was entitled to such a position as complainant alleges he claimed for himself." He denies all the allegations of misconduct on his part in the purchase of the machinery, the erection of the mill, and its conduct and superintendence; and alleges that the operations of the mill were conducted without any disturbance or difficulty for two or three months, when a difficulty arose between them having no connection with their business relations, and thereupon complainant took away from the mill his hands and oxen, and respondent was thus compelled to employ others to carry on the business.

A supplemental bill was afterwards filed, alleging that complainant, since the filing of the original bill, had purchased Vanderslice's interest in the mill. A great many witnesses were examined by both parties; the complainant's witnesses testifying to the facts, that Fogg was a clock maker or repairer by trade, that he knew nothing about machinery,

that he was incompetent to erect or superintend a mill, and that he had been guilty of particular acts showing great carelessness and recklessness in running the mill ; and the defendant's, on the contrary, tending to prove that the mill was properly built and worked, that Fogg was industrious, economical, and competent to manage the business, and that the difficulty between him and Johnston originated in a private affair in nowise connected with their business. The witnesses on both sides, however, agree that the state of feeling between the parties is such that the partnership can no longer be carried on profitably, if at all.

The chancellor rendered a decree, on final hearing, dissolving the partnership, as of and from the 23d June, 1852, but delivered no written opinion ; and his decree is now assigned for error.

E. S. DARGAN and R. H. SMITH assigned errors for the appellants, but submitted the case without argument.

F. S. BLOUNT and P. HAMILTON, contra.

RICE, J.—Where there is fraud, imposition, misrepresentation or oppression, in the original agreement for the partnership, a court of equity has jurisdiction to decree its dissolution, during the term for which it was originally entered into, and to declare it void ab initio. A court of equity may, also, decree a dissolution of the partnership, for causes arising subsequently to the formation of the contract, founded upon the misconduct, or fraud, or violation of duty, of one partner ; or on account of the inability, or incapacity of one partner to perform his obligations and duties, and to contribute his skill, labor, and diligence in the promotion and accomplishment of the objects of the partnership ; or for the existence of an impracticability in carrying on the undertaking for which the partnership was formed.—Story on Part., §§ 6, and 285 to 291; Collyer on Part., §§ 119, 296, 297, 360, and notes.

These principles are decisive of this case. It appears to our satisfaction, that Johnston was misled and deceived by the misrepresentations of Fogg, as to his skill and capacity as a machinist and engineer, and that but for these misrepresentations, Johnston would not have entered into the partner-

ship ; and that since the partnership was formed, Fogg has been guilty of misconduct and violation of his duty; and that, as against him, there existed just cause for dissolving the partnership before and on the 23d June, 1852, if not for declaring it void *ab initio*.

As applicable to such a case as the present, we sanction the principle, that a court of equity, in decreeing a dissolution of a partnership, may fix the date of the dissolution at the time of the abandonment by the aggrieved party and notice thereof given by him, if the equities of that party so require.— Durbin v. Barber, 14 Ohio R. 311.

We say nothing as to Vanderslice, because, during the pendency of the suit, he sold and transferred to complainant all his rights and interests in the partnership and its property, as appears by the supplemental bill and proof ; and this appeal is not taken or prosecuted by him. This is Fogg's appeal, and there is nothing in the decree of which Fogg can justly complain.

Decree affirmed, at the costs of Fogg and his surety.